# In the United States Court of Federal Claims

No.  09-746C

(Filed: May 31, 2011)

|  |  |  |
|---|---|---|
| **NOREEN M. HOLMES,** | ) | Former spouses as Survivor Benefit Plan |
|  | ) | beneficiaries; former-spouse election; |
| **Plaintiff,** | ) | 10 U.S.C. § 1448(b)(3); 10 U.S.C. |
|  | ) | § 1450(f)(3)(A); motion to dismiss; |
| **v.** | ) | equitable tolling; supplementation of the |
|  | ) | administrative record; substantial |
| **UNITED STATES,** | ) | compliance |
|  | ) |  |
| **Defendant,** | ) |  |
|  | ) |  |
| **and** | ) |  |
|  | ) |  |
| **LINDA HOLMES,** | ) |  |
|  | ) |  |
| **Defendant-Intervenor.** | ) |  |
|  | ) |  |
|  | ) |  |

Daniel J. Kelly, McCarter & English, LLP, Boston, MA, for plaintiff. With him at the hearing and on the briefs was John L. McGowan, Donahue, Tucker, & Ciandella, PLLC, Exeter, NH. Of counsel was Bonnie A. Vanzler, McCarter & English, LLP, Boston, MA.

Alex P. Hontos, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Steven J. Gillingham, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

Bernice M. Jenkins, Law Office of Bernice M. Jenkins, North Charleston, S.C., for defendant-intervenor.

**OPINION AND ORDER**

LETTOW, J.

This military benefits case involves tragic circumstances.  Thomas Holmes served honorably in the United States Navy from 1971 until he retired as a Sonar Technician First Class in 1993.  He died in a motor vehicle accident in 2006, leaving behind his former wife of twenty-

six years, plaintiff Noreen Holmes, and his wife of just over one year, defendant-intervenor Linda Holmes.  Pursuant to the terms of Noreen and Thomas Holmes' divorce decree, Ms. Noreen Holmes had been receiving a monthly payment of Mr. Holmes' retirement benefits, which ceased upon Mr. Holmes' death.  Ms. Noreen Holmes then applied to receive benefits under the Survivor Benefit Plan ("SBP"), a program designed to provide for survivors of retired military personnel, which benefits she understood were granted to her in the divorce.  The Board for Correction of Naval Records ("BCNR" or "Board") denied Ms. Noreen Holmes' request, holding that notwithstanding the existence of the divorce decree, neither she nor Mr. Holmes had fulfilled the statutory requirements that would have allowed Ms. Noreen Holmes to collect benefits under the Survivor Benefit Plan.  Ms. Noreen Holmes filed suit in this court for the benefits.  Ms. Linda Holmes, who is currently collecting Mr. Holmes' SBP benefits, has intervened.  Pending before the court are defendant's motion to dismiss and cross-motions for judgment on the record before the Board.

## BACKGROUND[1]

### A.  *The Survivor Benefit Plan*

Central to this case is the Survivor Benefit Plan, created in 1972 to provide for survivors of retired military personnel.  *See* Pub. L. No. 92-425, 86 Stat. 706 (1972) (codified, as amended, at 10 U.S.C. §§ 1447-1455).  Under the plan, premiums are deducted from an eligible service member's payments.  When the service member dies, payments go to the service member's designated beneficiary.

Enrollment in the plan is automatic for military personnel who are entitled to retired pay, unless they affirmatively opt out of the Survivor Benefit Plan.  *See* 10 U.S.C. § 1448(a)(1)(A), (a)(2)(A).  By default, benefits are paid to an eligible surviving spouse.  *See* 10 U.S.C. § 1450(a).  A service member whose marriage ends after becoming eligible to participate in the Survivor Benefit Plan has "one year after the date of the decree of divorce, dissolution, or annulment" to "elect to provide an annuity to that former spouse."  10 U.S.C. § 1448(b)(3)(A).  A service member who elects to provide an annuity to a former spouse under Section 1448(b)(3) must, at the time of making the election, provide the Secretary concerned[2] with a written statement, signed by the service member and the former spouse, stating whether the election is being made pursuant to the requirements of a court order or voluntary written agreement.  *See* 10 U.S.C.

---

[1]The court derives the background from the plaintiff's complaint, the exhibits attached to the plaintiff's complaint, and the administrative record.  In addressing the cross-motions for judgment on the administrative record, the court has "ma[d]e factual findings under [what is now Rule 52.1 of the Rules of the Court of Federal Claims ('RCFC')] from the record evidence as if it were conducting a trial on the record."  *Bannum, Inc. v. United States*, 404 F.3d 1346, 1357 (Fed. Cir. 2005).

[2]In title 10 of the United States Code, the phrase "the Secretary concerned" can refer to the Secretary of the Army, the Navy, the Air Force, or Homeland Security, depending on whether the relevant matter concerns the army, navy, air force, or coast guard.  *See* 10 U.S.C. § 101(a)(9).  Because Mr. Holmes was a service member in the navy, this decision will generally refer to the Secretary of the Navy as the pertinent official.

§ 1448(b)(5).

Alternatively, if a service member "is required . . . to provide an annuity to a former spouse and . . . fails or refuses to make such an election," the service member's former spouse may cause the election to be "deemed" made by providing the Secretary of the Navy with a "written request . . . that such an election be deemed to have been made," and a "[c]opy of [a] court order or other official statement" requiring the annuity to be paid to the service member's former spouse.  10 U.S.C. § 1450(f)(3)(A).  For a former spouse to invoke this "deemed election," the Secretary must "receive[] a request from the former spouse . . . within one year of the date of the court order or filing involved."  10 U.S.C. § 1450(f)(3)(C).

## B.  *The Retired Service Member*

Thomas Holmes began a career as an active duty seaman in the United States Navy on December 29, 1971.  *See* AR-121 to 122.[3]  The plaintiff avers that Thomas then married Mary D. Perry on June 16, 1973, in St. Louis, Missouri, and that the couple divorced in Connecticut on October 15, 1976.  *See* Compl. ¶¶ 8, 10; Compl. Ex. 1 (Judgment dissolving marriage of Mary and Thomas Holmes).

Noreen Holmes met Thomas in 1977 and married him on February 4, 1978, in Portsmouth, New Hampshire.  They had two children, born in 1979 and 1982, and remained married for twenty-six years.  Mr. Holmes was automatically enrolled in SBP spousal coverage in 1993, when he was transferred to the Fleet Reserve.  *See* AR-83.  On November 9, 2004, the couple agreed to dissolve their marriage and divided their property pursuant to a permanent stipulation they drafted without aid of counsel.  *See* AR-20 to 24 (Divorce Decree of Ms. Noreen Holmes and Mr. Thomas Holmes (Nov. 9, 2004)) (hereinafter "Divorce Decree"); *see also* Compl. ¶ 32 ("Noreen Holmes and Thomas Holmes handled the divorce *pro se*.").  Courts of the State of New Hampshire then issued a notice entering the divorce decree.  *See* AR-26 (Decree of Divorce, *In re Noreen Holmes and Thomas Holmes*, Case No. 2004-M-0401 (Nov. 9, 2004)).

Noreen and Thomas Holmes' divorce decree contained several provisions for Noreen's care. Thomas agreed to pay Noreen $450.00 per month in alimony for thirteen years.  Divorce Decree ¶ 9.  The decree also provided that Noreen would "continue to be the primary beneficiary of [Thomas'] life insurance policy through the [United States] Military."  *Id.* ¶ 11.  Another paragraph titled "Pensions and Other Tax-Deferred Assets" specified that Thomas "maintain[ed] a retirement account through the [United States] Military with an approximate value of $1,000.00 per month[, and that Noreen would be] awarded 55% monthly upon final decree."  *Id.* ¶ 14(A).  Noreen believed that paragraph 14(A) of the divorce decree referred to Thomas' SBP benefits.  *See* Compl. ¶ 37 ("Section 14(A) of the Divorce Decree cannot refer to anything other than the SBP.  The SBP is a retirement program and fifty-five percent of the base amount is the default amount at which the annuity is set."); *see also* 10 U.S.C. § 1451(a)(1)(A).  Following their divorce, Noreen received in a joint checking account held by Noreen and Thomas, Thomas' military retirement benefits in the amount of $1,000 per month.  Compl. ¶ 41.  Noreen avers that

---

[3]"AR-__" refers to the administrative record filed with this court in accord with RCFC 52.1(a).

she believed Thomas had arranged for her to receive his survivor benefits, pursuant to what she believed their divorce decree mandated, and had no knowledge of the SBP "deemed election" process until March 2007.  Compl. ¶¶ 49, 51, 52.

Thomas Holmes married defendant-intervenor Linda Holmes (formerly known as Linda Turner) on July 2, 2005.  Compl. ¶ 54.  A little over a year later, on July 31, 2006, Thomas Holmes died in a motor vehicle accident.  AR-28 (Certificate of Thomas Holmes' Death).  The next month, the retirement benefits previously paid at $1,000 per month stopped being credited to Noreen's account.  Compl. ¶ 60.

## C. *The Former Spouse's Effort to Obtain Administrative Redress*

On September 9, 2006, Noreen submitted to the Defense Finance and Accounting Service ("DFAS") a DD Form 2656-7 (Verification for Survivor Annuity).  *See* Compl. ¶ 63; AR-95 to 96 (DD Form 2656-7 (Verification for Survivor Annuity) (Sept. 9, 2006)).  On December 1, 2006, the government deposited $680.50 into Noreen's checking account, and a week later, on December 8, 2006, the same amount was debited.  *See* Compl. ¶ 65; Compl. Ex. 5 (Noreen's Bank Statement).  Noreen believed this deposit was the government's payment of her benefits under the Survivor Benefit Plan.  However, she avers that she never received a response concerning the DD Form 2656-7 or an explanation for the deposit to and withdrawal from her bank account.  Compl. ¶ 66.

On November 2, 2006, Noreen submitted a DD Form 149 (Application for Correction of Military Record), again seeking Thomas' survivor benefits.  *See* Compl. ¶ 67, AR-89 to 90 (DD Form 149 (Application for Correction of Military Record) (Nov. 2, 2006)).  The Board for Correction of Naval Records denied Noreen's request, stating that "the evidence submitted was insufficient to establish the existence of probable material error or injustice."  AR-82 (Letter from W. Dean Pfeiffer, Executive Director, BCNR, to Noreen Holmes (Mar. 14, 2007)).  A memorandum from the BCNR explained that when a service member "[i]s required to elect former[-]spouse coverage by a court order, . . .  the member may elect to change to former [-]spouse category coverage during the one[ ]year immediately following that date. . . .  If the member fails or refuses to make such election, the member shall be deemed to have made such election if the [DFAS] receives a request from the former spouse . . . within one year of the date of the court order or filing."  AR-83 (Mem. for Executive Director, BCNR (Feb. 9, 2007)).  Noreen did not attempt to make a deemed election within a year of her and Thomas' divorce, *see* Compl. ¶¶ 49-52, 98-99, and has not alleged that Thomas took steps to change his beneficiary from "spouse" to "former spouse."

Noreen wrote a letter to the Board on July 9, 2007, requesting reconsideration of its decision.  She included a copy of Thomas' revoked Last Will and Testament as evidence that Thomas wanted her to be "tak[en] care of."  AR-62 to 63 (Letter from Noreen Holmes to Board of Officers, Dep't of the Navy, BCNR (July 9, 2007)).  Noreen's request for reconsideration was denied because the new evidence she submitted was "not material."  AR-59 (Letter from Pfeiffer to Noreen Holmes (August 8, 2007)).

4

On February 20, 2008, Noreen submitted an Application and Verified Petition for Correction of Military Records, with attached exhibits to "demonstrate Thomas Holmes' intent that Noreen Holmes receive the SBP payments."  Compl. ¶ 72; AR-9 (DD Form 149 (Application for Correction of Military Record) (Feb. 20, 2008)).  The petition requested that the Board find that it was the intent and legal obligation of Thomas Holmes to provide SBP payments to Noreen and correct Thomas Holmes' military record to show that Noreen Holmes was deemed the recipient of the SBP payments.  *See* AR-14 to 15 (Verified Petition for Correction of Military Record of Thomas Holmes).

The Board's executive director, W. Dean Pfeiffer, replied to Noreen's petition on September 22, 2008.  *See* AR-5 to 7 (Letter from Pfeiffer to John L. McGowan (Sept. 22, 2008)).  Again, Noreen's request for reconsideration was denied because the new evidence she had submitted was not "material."  Mr. Pfeiffer explained, "[R]econsiderations are granted only upon presentation of new and material evidence or other matter that was not previously considered. . . . Evidence is considered to be 'material' if it is 'likely to have a substantial effect on the outcome' of the prior Board's decision."  AR-5 to 6.  The documents Noreen submitted on July 9, 2007, and February 20, 2008, were not considered "material" by Mr. Pfeiffer because "the [Board's] decision would inevitably [have been] the same" if the documents had been before the Board initially.  AR-6.

Mr. Pfeiffer emphasized that "there is . . . no evidence that [Noreen] made a 'deemed election' under 10 [U.S.C. §] 1450(f)(3) within one year of the divorce," and "when [Thomas] Holmes died, he was in the 'spouse' category of SBP coverage and had been married to Linda G. Holmes for over one year."  AR-6.[4]  Additionally, he stated,

> This board is ill-equipped to adjudicate . . . a dispute between two competing beneficiaries for the same benefit. The Board is not an adversarial forum.  There are no Board procedures for providing third parties (such as Linda G. Holmes) with notice and other basic due process rights that must be afforded before the government removes an entitlement. . . .  Finally, as a general matter, the Board will not take action when such action will operate to the detriment of an individual.  Here, granting your application would necessarily require that Linda lose her entitlement to SBP.

*Id*.  Mr. Pfeiffer then informed Noreen that she had "exhausted the administrative remedies available at BCNR" but could continue to "pursue the matter in a court of competent jurisdiction."  *Id*. at 6-7.

In a later e-mail exchange between Noreen's attorney, John L. McGowan, and William Hess of the BCNR, Mr. McGowan asked what hypothetically happened when (1) a service

---

[4]A subsequent spouse must be married to a qualifying service member for one year before the service member's death to be eligible for SBP benefits.  *See* 10 U.S.C. § 1447(7)(A).

member enrolled in SBP and made a spousal election, (2) the service member and spouse divorced, but the divorce decree failed to address the SBP, (3) neither service member nor spouse took affirmative steps to change the beneficiary of SBP payments from "spouse" to "former spouse," and (4) the service member did not remarry and passed away.  Compl. Ex. 12 at 2 (E-mail from McGowan to Hess (Nov. 10, 2008)).  Mr. Hess responded:

> The scenario you have asked about is fairly common.  In such cases (in the Navy at least), as I understand it, DFAS would deny the 'former spouse' application for an annuity and return any premiums deducted after the divorce to the person designated for arrearages of pay.  I have seen DFAS refer the member to the Correction Board (but I am not sure whether they do that in every case).

> Every case is different, but our Navy Board usually grants equitable relief to former spouses in this situation, assuming the retiree continued to pay premiums and did not marry someone else.  This is especially true in cases where the divorce decree requires 'former spouse' coverage. . . .  The 'theory' is usually that the spouse premiums were being deducted each month.   And the member was informed of the deductions.

> And he did not take any action to stop the deductions.   Therefore, presumably, the premiums were being deducted to cover somebody.  And if the only possible "somebody" is the former spouse, perhaps the member intended to "cover" the former spouse because there is nobody else left.

> []Note, this is not the only possible conclusion.   A reasonable person might also conclude that premiums continued to be deducted with the retiree[']s knowledge because the member simply did not know that he could stop them by simply telling DFAS he was divorced.   Not an unlikely scenario considering how technically complex this can be.  Or maybe, due to inattention, he did not know [wh]at the deductions were for or that they were being made.  Or, maybe the retiree allowed the deductions to continue without objection because he wanted to remarry and cover the new spouse and was afraid he would not be able to cover a new spouse unless he continued paying premiums while divorced.   There are lots of possible scenarios . . . .

> What distinguishes [Noreen's] case . . . ,
> however, is that [Thomas] paid "spouse" coverage
> premiums while he was married to [Linda].   It
> cannot as easily be said that he intended to "cover"
> [Noreen].   Perhaps those premiums were intended
> to "cover" [Linda].

*Id.*

In a later e-mail, Mr. Hess reiterated that it was BCNR's "view/policy that [it would] not make a change to a record that deprives another (Linda) of a benefit."  Compl. Ex. 12 at 1 (E-mail from Hess to McGowan (Nov. 20, 2008)).

### D.   *Suit in This Court*

Noreen brought suit in this court on November 2, 2009.  In her complaint, she requests SBP payments from August 1, 2006, to the present and continuing payments.  Compl. ¶ 108.  She also requests that Thomas' military records be corrected to specify Noreen as the recipient of SBP benefits.  Compl. ¶ 116.  Noreen additionally claims that the refusal of the Board to designate her as Thomas' beneficiary under the SBP has resulted in an unconstitutional taking, in the denial of due process of law, and in a violation of equal protection of the law.  *See* Compl. at 17 (Count III), at 21 (Count IV), at 23 (Count V).

Pending before the court are the government's motions to dismiss and for judgment on the administrative record and plaintiff's cross-motion for judgment on the administrative record.  Evidentiary matters are also at issue; the government objects to the court's consideration of certain materials attached to plaintiff's complaint, and defendant-intervenor has moved to supplement the administrative record.

## ANALYSIS

## I.  JURISDICTION

The government seeks dismissal of Counts III and V of plaintiff's complaint for lack of subject matter jurisdiction.  These counts allege that the government denied plaintiff's constitutional rights to due process of law and equal protection.

"Jurisdiction must be established as a threshold matter before the court may proceed with the merits of this or any other action."  *OTI Am., Inc. v. United States*, 68 Fed. Cl. 108, 113 (2005) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998)).  When considering a motion to dismiss for lack of subject matter jurisdiction, the court "accepts as true the undisputed allegations in the complaint, and draws all reasonable inferences in favor of the plaintiff."  *De Maio v. United States*, 93 Fed. Cl. 205, 209 (2010) (citing *Hamlet v. United States*, 873 F.2d 1414, 1415-16 (Fed. Cir. 1989)).  When a defendant or the court challenges the court's jurisdiction, "'the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction.'"  *Hall v. United States*, 91 Fed.

Cl. 762, 770 (2010) (quoting *Murphy v. United States*, 69 Fed. Cl. 593, 600 (2006), and citing *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993)).

The Tucker Act grants this court jurisdiction over claims "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). However, "[t]he Tucker Act itself does not create a substantive cause of action; . . . to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc portion) (citing *United States v. Mitchell*, 463 U.S. 206, 216 (1983)).

This court generally lacks jurisdiction to hear due process and equal protection claims because the fifth-amendment due process clause is not money-mandating. *See LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995); *Mullenberg v. United States*, 857 F.2d 770, 773 (Fed. Cir. 1988) (citing *United States v. Testan*, 424 U.S. 392, 401-02 (1976)); *Nwogu v. United States*, 94 Fed. Cl. 637, 649-50 (2010); *Del Rio v. United States*, 87 Fed. Cl. 536, 539-40 (2009).[5] Noreen Holmes acknowledges that the due process clause is not an "'independently sufficient'" basis for this court's jurisdiction. Pl.'s Resp. to Def.'s Mot. to Dismiss and Cross-Mot. for Judgment ("Pl.'s Cross-Mot.") at 4 (quoting *Marandola v. United States*, 76 Fed. Cl. 237, 249 (2007)). However, she argues that the court can consider constitutional claims when they arise from the government's conduct under a money-mandating statute, such as the Survivor Benefit Plan program, 10 U.S.C. §§ 1447-1455. *See* Pl.'s Cross-Mot. at 5.

The determination of whether Noreen Holmes is entitled to Mr. Holmes' survivor benefits "may include consideration of whether [the denial of SBP benefits to Ms. Holmes] violated [a] constitutional right[]" if the "constitutional issue does not stand alone, but is a factor in the claim for which Tucker Act jurisdiction is established." *Holley v. United States*, 124 F.3d 1462, 1466 (Fed. Cir. 1997) (holding that the Court of Federal Claims had jurisdiction over a due process claim that supported entitlement to military back pay); *see also Filipczyk v. United States*, 386 Fed. Appx. 973, 977 (Fed. Cir. 2010) ("Claimants in the Court of Federal Claims may argue issues based on violations of the Constitution or of a statute or regulation to support their claims for monetary relief under money-mandating statutes."); *Sam v. United States*, 682 F.2d 925, 935 (Ct. Cl. 1982) ("Plaintiffs' equal protection challenge is based upon the Navy's interpretation of [certain] statutes. . . . [P]laintiffs' claim [is] that the subject statutes, if correctly construed according to the fifth amendment, [would] require this court to award money damages. This is precisely the type of claim over which this court has jurisdiction.").

Ms. Noreen Holmes claims she had an "entitlement to SBP annuity benefits" and that the government's failure to provide notice and an opportunity to be heard before the "termination of

---

[5]The due process and equal protection clauses of the fourteenth amendment apply exclusively to the states. However, the due process clause of the fifth amendment has been held to incorporate principles of equal protection. *See Bolling v. Sharpe*, 347 U.S. 497, 498-99 (1954).

her entitlement to SBP annuity benefits [became] effective" constituted a violation of procedural due process.  Compl. ¶ 127.[6]  Correlatively, at the heart of her equal protection claim is the allegation that the government treats the class of "former spouses of military veterans" "substantially different[ly] depending on whether the former spouse's military veteran spouse had remarried and depending on the specific military affiliation of the former spouse."  *Id.* ¶¶ 155, 156.

These allegations are not merely part of a claim that the government failed to grant Ms. Noreen Holmes benefits she was owed under the Survivor Benefit Plan.  Instead, they raise separate issues which stand alone.  This court therefore lacks subject matter jurisdiction to hear those stand-alone due process and equal protection claims, and they necessarily are dismissed without prejudice.[7]

---

[6]To the extent that Ms. Noreen Holmes has made a separate statutory claim that she is entitled to notice, this court has consistently held that the United States is not required to provide service members' former spouses with notice of their rights and obligations under the SBP.  *See Pence v. United States*, 52 Fed. Cl. 643, 646-47 (2002); *Woll v. United States*, 41 Fed. Cl. 371, 375 (1998) ("The elaborate statutory scheme for SBP insurance does not place that burden on the Army, and makes it incumbent on the spouse to trigger notification for a deemed election of former spouse benefits.").  *But cf. Downing v. Office of Pers. Mgmt.*, 619 F.3d 1374, 1377 (Fed. Cir. 2010) (noting that under the Civil Service Retirement System "[a] former spouse may receive survivor annuity benefits in the absence of a new election by the annuitant if (1) the annuitant did not receive the  required annual notice of his election rights under 5 U.S.C. § 8339(j), . . . and (2) 'there is evidence sufficient to show that the retiree indeed intended to provide a survivor annuity for the former spouse.'" (quoting *Hernandez v. Office of Pers. Mgmt.*, 450 F.3d 1332, 1334-35 (Fed. Cir. 2006))); *Simpson v. Office of Pers. Mgmt.*, 347 F.3d 1361, 1365 (Fed. Cir. 2003) (holding that notice given under the Civil Service Retirement System is insufficient if it does not specify that a reelection after divorce is required to provide such an annuity for a former spouse).

[7]In Count III, the plaintiff also addresses "the BCNR's . . . 'view' or 'policy' against adjudicating a dispute between competing beneficiaries and changing a military record if doing so would deprive another person of a benefit."  Compl. ¶ 129.  The plaintiff calls this position "arbitrary and capricious, unreasonable, contrary to the intent of the SBP, . . . inconsistent with 10 U.S.C. [§] 1453(a)," "not authorized by . . . the procedures for . . . consideration of an application for correction of military records," and "contradict[ing] the practice of the BCNR" and "of other Boards for Correction of Military Records of other branches of the U.S. Military" in similar situations.  Compl. ¶¶ 132-35.  Although this claim has been included in the plaintiff's Count III, which concerns denial of due process of law, it relates to the BCNR's substantive decision-making policies rather than the procedures afforded to Noreen Holmes.  Accordingly, the court will consider this challenge to the stated position of BCNR as part of plaintiff's statutory claim and not as a separate due process claim.

## II.  MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

"To survive a motion to dismiss [for failure to state a claim upon which relief can be granted], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, __ U.S. __, __, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The allegations contained in the complaint must indicate to the court that there is "more than a sheer possibility that a defendant has acted unlawfully;" "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S.Ct. at 1949-50 (citing *Twombly*, 550 U.S. at 555, 556).

In performing this analysis, the court must construe the allegations of the complaint in the light most favorable to the plaintiff.  *See Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995); *see also Hamlet*, 873 F.2d at 1416.  It must decide "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds as noted in Francis v. Giacomelli*, 588 F.3d 186, 192 n.1 (4th Cir. 2009)).

### A.  *Claim of Right to Survival Benefit Plan Annuity*

The government has moved to dismiss Ms. Noreen Holmes' claim that she was unjustly denied benefits under the SBP, arguing that Ms. Noreen Holmes would be "eligible for the SBP annuity only if (1) Mr. Holmes elected to change his beneficiary status from 'spouse' to 'former spouse,' or (2) she complied with the statutory requirements for a deemed election."  Def.'s Mot. at 12 (citing 10 U.S.C. §§ 1448(b)(3), 1450(f)(3); Dep't of Defense Financial Management Regulation 7000.14R, Military Pay, Policy, and Procedures, vol. 7B, chap. 43, § 430503 (June 2008)).  Ms. Noreen Holmes did not know about the deemed-election process until March 2007, over two and a half years after her divorce, and has not alleged that she complied with the statutory requirements to make a deemed election.  *See* Compl. ¶¶ 49-52.  She also does not allege that Mr. Holmes changed his beneficiary status from "spouse" to "former spouse" but rather she avers that Mr. Holmes intended for her to receive SBP payments and that her receipt of benefits under the SBP was required by her and Mr. Holmes' divorce decree.  *See* Compl. ¶¶ 35-37, 39-40, 46.

The government asserts that Mr. Holmes' intentions and Noreen and Thomas Holmes' divorce decree are irrelevant to the question of who ought to receive Mr. Holmes' SBP benefits. The government argues that Noreen Holmes cannot have been inappropriately denied SBP benefits as a matter of law because she has not alleged that she or Thomas fulfilled the statutory requirements for her, as a former spouse, to receive the benefits.  *See* Def.'s Mot. at 12.

Courts which have previously considered a former spouse's entitlements under the SBP have sometimes focused on the statutory scheme's formal requirements and have sometimes considered equitable principles or the intent of relevant parties.  Decisions which emphasize

formal compliance with the statute include *Woll*, 41 Fed. Cl. 371, and *Pence,* 52 Fed. Cl. 643.

*Woll* concerned a service member's divorce from his spouse. The divorce decree required that "any survivorship rights in [Mr. Woll's] military pension shall vest in [his former wife] upon [his] death . . . to the extent allowable by law." 41 Fed. Cl. 372.[8] After his divorce, notwithstanding the divorce decree, Mr. Woll contacted the Department of Defense Finance and Accounting Service (DFAS), directing the DFAS to discontinue his participation in the SBP because he no longer had a spouse. *Id.* His former spouse did not attempt to make a deemed election within a year and did not know she had to take steps to secure her survivor benefits. She did, however, submit her divorce decree to DFAS to secure alimony. *Id.* at 375. Mr. Woll did not remarry and died several years later. Following his death, Mr. Woll's former spouse applied for benefits under the SBP program and was rejected. *Id.* at 373. In the Court of Federal Claims, the court upheld the denial of benefits to Mr. Woll's former spouse, explaining, "Congress has determined the manner by which the Army is to administer this annuity program, and plaintiff failed to perfect her rights in the manner set forth by statute. . . . Plaintiff cannot receive SBP benefits because she fails to meet the statutory requirements for eligibility as a former spouse." *Id.* at 375.

In *Pence*, Mr. and Mrs. Pence divorced at a time when the SBP existed, but when former spouses could not receive benefits. 52 Fed. Cl. at 644-45. After the Pences' divorce but before Mr. Pence's death, Congress enacted Pub. 98–94, 97 Stat 614 (1983), allowing retired service members, for the first time, to elect "former[-]spouse coverage" under the SBP. 52 Fed. Cl. at 645. Such an election had to be in writing and submitted within one year of the degree of divorce. *Id.* For members whose divorce decrees were already dated more than one year prior, Congress provided a one-year open enrollment period. *Id.* Congress later granted retired service members who had SBP coverage another period of one-year open enrollment to elect "former[-] spouse coverage." *Id.* (citing Pub. L. 99–145, 99 Stat 583 (1985)). Mr. Pence never elected former-spouse coverage but did file his divorce decree with the "appropriate Air Force finance center." 52 Fed. Cl. at 645. The court observed, "[I]t is not a stretch of law to conclude that Major Pence was under an obligation to take the steps necessary from the date of his divorce and thereafter to effect the state court's divorce decree terms. That he did not do so is stipulated by the parties. In any event, Major Pence either failed or refused to make the election when that opportunity became available." *Id.* at 648. The court held that Mr. Pence's submission of his divorce decree was not sufficient to fulfill the statutory requirements for making a "deemed election" under 10 U.S.C. § 1450(f)(3)(A), which required Ms. Pence to submit a "written request . . . that such an election be deemed to have been made," and a "[c]opy of a court order or other official statement" requiring the annuity to be paid to her. *Id.* at 647. The court acknowledged the adverse effect of its ruling on the former spouse: "It may be that Congress has inadvertently overlooked the admittedly difficult situation of former military spouses like plaintiff here who thought they were properly provided for in their divorce decrees and did not know of the affirmative requirement to submit a timely request for deemed election benefits. It is not for this [c]ourt, however, to act as a legislative body by filling in the interstices of otherwise clearly elaborated statutory provisions." *Id.* at 648-49.

---

[8]The government conceded that the decree's language could not refer to anything other than the SBP. 41 Fed. Cl. at 372.

Other decisions have employed equitable considerations in applying the SBP's requirements.  In *Holt v. United States*, 64 Fed. Cl. 215, 218 (2005), Mr. Holt, a service member, divorced his wife, Mrs. Shirley Holt, and later remarried.  Mr. Holt died over a year after his second marriage, and his wife at the time of his death began collecting his SBP benefits.  *Id.* Although the divorce decree between Mr. Holt and Ms. Shirley Holt stated, "[Mr. Holt] shall maintain [Ms. Shirley Holt] as sole beneficiary of the Survivor Benefit Plan," Mr. Holt did not change his designated beneficiary status from "spouse" to "former spouse."  *Id.* at 216. Although Ms. Shirley Holt submitted the divorce decree to DFAS "as many as three times during the one-year window for deemed election," she did not make the separate "written request" required to make a deemed election under 10 U.S.C. § 1450(f)(3)(A) because she "believe[d] that she had done all that was necessary to secure all her entitlements."  *Id.* at 218.  The court noted that "[a]fter hearing oral argument on the initial briefs . . . , we became convinced that neither the [c]ourt, nor the [p]laintiff, nor even the [g]overnment, understood the proper procedure for making a deemed election by a former spouse."  *Id.* at 220.  Subpart 1450(f)(3)(A)(i) specifies that a written request should be made "in such manner as the Secretary shall prescribe."  No regulations specifying the form of written request existed during the relevant time period in *Holt*.  64 Fed. Cl. at 223.[9]  The court found that Ms. Shirley Holt had successfully made a deemed election through the filing of her divorce decree and through a written request a DFAS paralegal submitted on Ms. Shirley Holt's behalf.  *See id.* at 227-228. The court explained, "Contrary to the rationale of *Woll* or *Pence*, there was at the time in question, no magic language required nor specific procedures involved in making a deemed

---

[9]Subsequent to the pertinent time period in *Holt*, the Secretary prescribed the manner in which a written request is to be received.  At the time of Mr. and Mrs. Holmes' divorce, this regulation provided:

> [T]he member shall be deemed to have made such an election if the Secretary of the military department concerned receives a written request from a former spouse or the former spouse's attorney on behalf of the former spouse.  The request is acceptable if it refers to or cites provisions in a court order concerning SBP former[-]spouse coverage, or makes clear by other references to SBP that there is an intent that the annuity coverage be provided to the former spouse.  The written request must be accompanied by a copy of the pertinent court order or agreement referring to the SBP coverage.

DoD Financial Management Regulation DoD 7000.14-R, Military Pay, Policy, and Procedures, vol. 7B, chap. 43 § 430503(C) (Oct. 2000).

A regulation now in place provides that "the member shall be deemed to have made such election if the Secretary of the Military Department concerned receives a completed DD Form 2656-10 from a former spouse or the former spouse's attorney on behalf of the former spouse.  The DD Form 2656-10 must be accompanied by a copy of the pertinent court order or agreement referring to the SBP coverage."  Dep't of Defense Financial Management Regulation 7000.14-R, Military Pay, Policy, and Procedures, vol. 7B, chap. 43 § 430503(C) (Dec. 2010).

election." *Id*. at 228.  It criticized the "highly formalized approach" taken in the *Woll* and *Pence* decisions, noting that "the various service Correction Boards have overlooked the one-year window and enforced defective deemed elections on equitable grounds." *Id*. at 227-228 (citing Letter of W. Dean Pfeif[f]er, BCNR, to Sen. Jon Kyl (Jul. 18, 2000) (discussing exception to policy regarding review of former-spouse applications in a "rather narrow range of cases . . . where it was clear that both the former spouse and the deceased service member clearly intended that the former spouse would be covered by SBP and where, because the deceased service[ ]member had not remarried, there was no competing claim of coverage by a subsequent spouse.")).

*Bonewell v. United States*, 95 Fed. Cl. 752 (2010), also explicitly disapproves of a strict reading of the SBP's former-spouse election procedures.  Mr. Bonewell had elected to provide SBP coverage for his children and wife, Ms. Rosa Bonewell. *Id*. at 754.  Mr. Bonewell and Ms. Rosa Bonewell divorced and agreed that Ms. Rosa Bonewell would receive Mr. Bonewell's SBP benefits. *Id*.  Mr. Bonewell submitted DD Form 2558 to DFAS, requesting part of his retirement allotment be directed to Ms. Rosa Bonewell pursuant to their Decree of Dissolution, and attached part of the decree to the form, including the paragraph providing SBP payments to Ms. Rosa Bonewell. *Id*. at 754-55.  However, neither Mr. Bonewell nor Ms. Rosa Bonewell made a request with DFAS to change Mr. Bonewell's SBP coverage from "spouse" to "former spouse." *Id*. at 755.  Mr. Bonewell married Ms. Carmen Titong-Bonewell and did not attempt to change his SBP election. *Id*.  He died over a year later. *Id*.  DFAS denied Ms. Rosa Bonewell's application for SBP benefits because Mr. Bonewell had elected to participate in SBP spouse and child coverage, and Ms. Rosa Bonewell was not Mr. Bonewell's spouse at the time of his death. *Id*.  As in the present case, the government argued that Ms. Rosa Bonewell had not stated a claim upon which relief could be granted because the statutory and regulatory requirements for electing former-spouse coverage had not been strictly met. *Id*. at 762.  Ms. Rosa Bonewell argued that by virtue of Mr. Bonewell's submitting the relevant portion of the Decree of Dissolution to DFAS, he had "substantially complied with the legal requirements for a former [-]spouse election." *Id*.  After an examination of precedent and the underlying purposes of the former-spouse election requirements, the court concluded that alleging substantial compliance with the requirements of 10 U.S.C. § 1448(b) and its implementing regulations could state a claim for relief. *Id*. at 768.  The court did not reach a final judgment, remanding the case to consider evidentiary issues. *Id*. at 769.

Ms. Noreen Holmes acknowledges that neither she nor Thomas Holmes strictly complied with the statutory and regulatory requirements for electing former-spouse coverage.  Although she does not allege that the government knew the content of the divorce decree, she does state that after the divorce, she received $1,000 a month from the government, pursuant to the terms of the divorce decree, Compl. ¶ 41, and infers that Mr. Holmes had taken some action with the government to direct the funds.

Ms. Noreen Holmes claims that "[the government's] knowledge of the divorce, [the government's] post-divorce payments to Noreen Holmes, and Thomas Holmes' manifest intent . . . to provide Noreen Holmes with SBP benefits constitutes a 'deemed election' that secures Noreen Holmes' entitlement to the SBP annuity." Compl. ¶ 104.  In effect, she contends that there was substantial compliance with the requirements for electing former-spouse coverage.

These allegations survive a motion to dismiss. *See Bonewell*, 95 Fed. Cl. at 768; *Holt*, 64 Fed. Cl. at 219-20 ("This is a military pay case, in which the entitlement to statutory benefits is at issue. The question of entitlement to those benefits is a merits question, and clearly survives a RCFC 12(b)(6) motion.").

## B. *Claim for Correction of Military Records*

Ms. Noreen Holmes' claim for improper denial of correction of military records, *see* Compl. ¶¶ 111, 116, is necessarily bound up with her claim for denial of survivor benefits. If she is entitled to SBP benefits as a former spouse, then this court has the authority to correct Mr. Holmes' military records. *See* 28 U.S.C. § 1491(a)(2) ("To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States."); *see also Holt*, 64 Fed. Cl. at 228 (remanding to the BCNR to correct a service member's military record to indicate that a deemed election had been made). The government's motion to dismiss Ms. Noreen Holmes' claim for correction of military records is accordingly denied.

## C. *A Takings Claim*

Finally, Ms. Noreen Holmes claims that she "has a substantial, cognizable, protected property interest in Thomas Holmes' SBP survivorship benefits" and that the government's refusal to pay those benefits to Noreen constitutes a taking. *See* Compl. ¶¶ 147-51. She requests "just compensation and a declaration that [the government's] conduct is unconstitutional under the [t]akings [c]lause of the Fifth Amendment." Compl. ¶ 152. She did not assert a takings claim before the BCNR. As a consequence, she cannot now challenge on review the denial of survivor benefits on that ground. *See Metz v. United States*, 466 F.3d 991, 999 (Fed. Cir. 2006); *Murakami v. United States*, 398 F.3d 1342, 1354 (Fed. Cir. 2005). The government's motion to dismiss under RCFC 12(b)(6) is granted insofar as this claim is concerned.

## III. THE ADMINISTRATIVE RECORD OF BCNR'S ACTION

In reviewing BCNR's action respecting Ms. Noreen Holmes' claims, the court must render its judgment on the administrative record "the agency presents to the reviewing court." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *see also id*. at 743 ("'[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.'") (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). If the administrative record is incomplete, "[t]he reviewing court is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry." 470 U.S. at 744. Rather "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Id*. at 744; s*ee also Riser v. United States*, 93 Fed. Cl. 212, 217 (2010). Exceptions to this rule apply in "cases in which the omission of extra-record evidence precludes effective judicial review." *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009) (internal quotation marks omitted); *see also Vanguard Recovery Assistance, J.V. v. United States*, __ Fed.

Cl. __, __ n.19) (slip op. at 25 n.19) (May 27, 2011) (listing three typical situations in which the agency record may not be sufficient for effective review).

A.  *Certain Exhibits to Ms. Noreen Holmes' Complaint*

The government argues that exhibits 5 and 12 of Ms. Noreen Holmes' complaint were not part of the administrative record and should not be considered by the court when deciding motions for judgment on the administrative record.  *See* Def.'s Mot. at 24 n.6.  Responding to the government's objection, Noreen Holmes states, "[I]f the [c]ourt decides to limit its review to the [a]dministrative [r]ecord [instead of conducting *de novo* review] . . . , then the [c]ourt should supplement the [a]dministrative [r]ecord with [e]xhibits 5 and 12 because they are necessary for effective judicial review of this case and reflect an exceptional circumstance justifying their review by the [c]ourt."  Pl.'s Resp. to Gov't's Objection to the Court's Consideration of Materials Included as Exhibits to the Complaint ("Pl.'s Opp'n") at 3.  The court will treat this response as a motion to supplement the administrative record with exhibits 5 and 12.

Exhibit 5 to Ms. Noreen Holmes' complaint is a bank statement which shows the government's credit and debit of what Noreen believes was an SBP payment.  Ms. Noreen Holmes avers that the payment shows that "the [g]overnment had knowledge of [her] and Thomas' divorce and understood that Noreen was entitled to receipt of the SBP payments per the terms of their Divorce Decree."  Pl.'s Opp'n at 5.  Exhibit 12 consists of several e-mails between Noreen's attorney, John L. McGowan, and William Hess of the BCNR, which support the statement of W. Dean Pfeiffer that the Board follows a policy of not "tak[ing] action when such an action will operate to the detriment of an individual [such as Linda Holmes]."  AR-6 (Letter from W. Dean Pfeiffer, Executive Director, BCNR, to John L. McGowan (Sept. 22, 2008)); *see also* Compl. Ex. 12 at 1 ("[N]one of this would change our view/policy that we will not make a change to record that deprives another of a benefit.").

To perform an effective review pursuant to the Administrative Procedure Act, the court must have a record containing the information upon which the agency relied when it made its decision as well as any documentation revealing the agency's decision-making process.  *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) ("[S]ince the bare record may not disclose the factors that were considered or the Secretary's construction of the evidence[,] it may be necessary for the [d]istrict [c]ourt to require some explanation in order to determine if the Secretary acted within the scope of his authority and if the Secretary's action was justifiable under the applicable standard."), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 104-05 (1977).  The agency did not have exhibit 5 before it, and the e-mails contained in exhibit 12 did not exist when the board rendered its decision.  To the extent that exhibit 12 sheds light on the Board's "decision-making process," Mr. Hess' statements merely corroborate a statement made by Mr. Pfeiffer in his rejection of Ms. Noreen Holmes' final request for reconsideration of the BCNR's decision and are not necessary for effective judicial review.  Accordingly, neither of these exhibits will be added to the administrative record.[10]

---

[10]Exhibits to a complaint nonetheless are properly considered in ruling on the government's motion to dismiss, *see Bonewell*, 95 Fed. Cl. at 753 n.1, and in addressing the

### B. *Supplementation Proposed by Ms. Linda Holmes*

Defendant-Intervenor, Ms. Linda Holmes, has moved to supplement the administrative record with an affidavit by her plus three pieces of correspondence.  Both the government and Ms. Noreen Holmes oppose this motion.

Ms. Linda Holmes relies upon the precept that supplementation of the administrative record is permissible where it is "required for meaningful judicial review."  Def.-Intervenor's Reply at 3 (quoting *Impresa Construziono Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1338 (Fed. Cir. 2001)) (internal quotation marks omitted).  However, consideration of the documents Ms. Linda Holmes seeks to add to the administrative record is not necessary for a full and complete understanding of the issues in this case.  Ms. Linda Holmes' declaration describes her relationship with Thomas Holmes, and the correspondence provides a further glimpse into that relationship and a discussion between Linda and Noreen Holmes about the Survivor Benefit Plan.  These materials are not probative of the issues before this court and before the BCNR.  Accordingly, Ms. Linda Holmes' motion to supplement the administrative record is denied.

## IV.  CROSS-MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Ms. Noreen Holmes and the government have moved for judgment on the administrative record.  In addressing cross-motions for judgment on the administrative record pursuant to RCFC 52.1(c), the court asks whether the party seeking relief has shown that the Board's decision was arbitrary and capricious, contrary to law, or unsupported by substantial evidence.  *See Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005); *Godwin v. United States*, 338 F.3d 1374, 1378 (Fed. Cir. 2003).  Under this standard, the court must ask "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park*, 401 U.S. at 416.  The Board's decision will comply with the substantial evidence standard so long as a "'reasonable mind might accept' [the] particular evidentiary record as 'adequate to support [the contested] conclusion.'"  *Dickinson v. Zurko*, 527 U.S. 150, 162 (1999) (quoting *Consolidated Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).  Similarly, the arbitrary and capricious standard "requires a reviewing court to sustain an action evincing rational reasoning and consideration of relevant factors."  *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000).

In sum, the court must satisfy itself that the Board considered all of the relevant evidence and provided a reasoned opinion that reflects a contemplation of the facts and circumstances pertinent to the case before it.  *See Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983) ("Under the substantial evidence rule, *all* of the competent evidence must be considered, whether original or supplemental, and whether or not it supports the challenged conclusion."); *see also Melendez Camilo v. United States*, __ F.3d __, __, 2011 WL 1601997, at *3 (Fed. Cir. Apr. 29,

---

motion to supplement.  *See Vanguard Recovery Assistance*, __ Fed. Cl. at __ n.20 (slip op. at 26 n.20).  Exhibits 5 and 12 have been considered in those contexts and are part of the record of this case, although not of the administrative record of the BCNR's decision.

2011).

Ms. Noreen Holmes has urged the court to review her case *de novo*, rather than under the arbitrary and capricious standard, because "BCNR review . . . [was] not a strict precondition to [her] suit."  Compl. ¶ 88; *see also* Pl.'s Cross-Mot. at 26.  In support of her position, she cites *Holt*, 64 Fed. Cl. at 220, which decided a claim for SBP benefits on a Motion for Summary Judgment rather than a Motion for Judgment on the Administrative Record.  Pl.'s Cross-Mot. at 26.  In *Holt*, the court observed,

> We are . . . not reviewing the decision of the BCNR. Although that is typically the route traveled before a military pay claim comes before this [c]ourt, the Board's review is not a mandatory precondition to filing suit. . . . The Board declined Mrs. Holt's petition because she was not a qualified applicant. While Mrs. Holt challenges the Board's jurisdictional rejection, she also seeks substantive relief.

64 Fed. Cl. at 220.

In *Holt*, however, there was no administrative record for the Court of Federal Claims to review because the plaintiff's case before the military corrections board had been dismissed on jurisdictional grounds.  Had the military corrections board reviewed the plaintiff's case substantively, the *Holt* court would have been required to adjudicate the plaintiff's case on a motion for judgment on the administrative record, rather than on a motion for summary judgment.  *See Martinez v. United States*, 333 F.3d 1295, 1307-08, 1311-14 (Fed. Cir. 2003) (en banc) (stating that a service member need not seek relief from a military corrections board before suing in the Court of Federal Claims, but when a service member does pursue relief before a board, the Court of Federal Claims should apply its ordinary standard of review to the board's actions).  Consequently, the court will not review this matter *de novo*, but will determine whether the Board's decision was arbitrary and capricious, contrary to law, or unsupported by substantial evidence.  *See Chambers*, 417 F.3d at 1227; *Godwin*, 338 F.3d at 1378; *Martinez*, 333 F.3d at 1314.

## A. *Explicit Election of Former-Spouse Coverage*

Analysis of an explicit election of former-spouse coverage begins by clarifying the role of the divorce decree in this dispute.  Ms. Noreen Holmes argues that the existence of the divorce decree alone should have perfected her rights to Mr. Holmes' SBP benefits.  For purposes of resolving the motions for judgment on the administrative record, the court assumes without deciding that the divorce decree included an obligation for Mr. Holmes to provide his SBP benefits to Ms. Noreen Holmes in the event of his death.

A former spouse's entitlement to SBP benefits can be secured by parties to a divorce in one of two ways.  Either the service member whose marriage ends can "elect to provide an

annuity to that former spouse," 10 U.S.C. § 1448(b)(3)(A)(i)(II), (A)(iii); or the former spouse can file a "written request . . . that such an election be deemed to have been made" along with a"[c]opy of court order or other official statement" requiring the annuity to be paid to the service member's former spouse.  10 U.S.C. § 1450(f)(3)(A).

A service member can, by agreement or court order, incur an obligation to secure benefits for a former spouse by electing former-spouse coverage.  However, the service member's legal obligation to elect SBP coverage for his or her former spouse does not create a corresponding legal obligation for the United States government to grant SBP benefits when the statutory prerequisites for securing those benefits have not been fulfilled.  Regardless of what Mr. Holmes promised Ms. Noreen Holmes in their agreed divorce decree, the statute requires Mr. Holmes or Ms. Noreen Holmes to take particular steps to secure former-spouse benefits under the SBP.  The mere existence of the divorce decree does not, as a matter of law, secure former-spouse benefits to Ms. Noreen Holmes.  While New Hampshire law recognizes non-vested military retirement benefits as marital property for the purposes of dividing property during the dissolution of marriage, *see* N.H. Rev. Stat. Ann. § 458:16-a(I); *Halliday v. Halliday*, 593 A.2d 233, 234 (N.H. 1991); the division of those assets in a divorce does not, on its own, cause unvested government benefits to vest.  *Cf. Schism v. United States*, 316 F.3d 1259, 1268 (Fed. Cir. 2002) ("Benefits for retired military personnel — and for civilian retired federal employees  . . . — depend upon an exercise of legislative grace, not upon principles of contract, property, or 'takings' law."); *Zucker v. United States,* 758 F.2d 637, 640 (Fed. Cir. 1985) (explaining that federal workers' "entitlement to retirement benefits must be determined by reference to the statute[s] and regulations governing these benefits, rather than to ordinary contract principles").  The BCNR followed these limiting conditions in concluding that neither Mr. Holmes nor Ms. Noreen Holmes had fulfilled the statutory requirements to elect SBP former-spouse coverage.

### B. *Substantial Compliance with Deemed-Election Procedures*

Pursuant to *Bonewell*, Ms. Noreen Holmes argues that substantial compliance with the requirements of the SBP deemed-election process occurred and should be given effect.  *See* Pl.'s Cross-Mot. at 7 ("[T]he facts and circumstances [of] this case qualify as [creating] a deemed election."); Pl.'s Resp. to Def.-Intervenors' Supplemental Br. at 2-3 (discussing *Bonewell*, 95 Fed. Cl. 752).  *Bonewell* considers whether a service member can substantially comply with the former-spouse election requirements of 10 U.S.C. § 1448(b), but it specifically did not analyze whether the former spouse had stated a viable claim for making a deemed election under 10 U.S.C.§ 1450(f)(3)(A).  *See* 95 Fed. Cl at 762 n.12.  Ms. Noreen Holmes has raised both alternatives.

### 1. *Deemed election under 10 U.S.C. § 1450(f)(3)(A).*

If a service member "is required . . . to provide an annuity to a former spouse and . . . fails or refuses to make such an election," the election may be "deemed" to have been made if Secretary of the Navy receives a "written request . . . from the former spouse concerned requesting that such an election be deemed to have been made" and a "[c]opy of [a] court order or other official statement" requiring the annuity to be paid to the service member's former spouse.  10 U.S.C. § 1450(f)(3)(A).  For a former spouse to take advantage of this "deemed

election" option, the Secretary of the Navy must "receive[] a request from the former spouse . . . within one year of the date of the court order or filing involved." 10 U.S.C. § 1450(f)(3)(C).

Ms. Noreen Holmes does not claim she communicated with the government about her divorce or benefits, in writing or otherwise, during the one-year period from the date of her divorce. *A fortiori*, Ms. Noreen Holmes cannot support a substantial-compliance argument through a timely request made to the Secretary of the Navy.

The second element of the deemed-election process concerns the Secretary's receipt of a "[c]opy of [a] court order or other official statement" requiring the annuity to be paid to the service member's former spouse. 10 U.S.C. § 1450(f)(3)(A)(ii). The court does not decide here if the submission of a divorce decree in an unrelated document, unaccompanied by a submission of a written request by a former spouse, can constitute a deemed election.[11] Based upon the facts at hand, there is no indication that Ms. Noreen Holmes submitted her divorce decree to the government for any purpose during the one-year period within which she could have made a deemed election. She therefore cannot support a substantial compliance argument by arguing she complied with the second aspect of the deemed election requirement.

   2. *Election under 10 U.S.C. § 1448(b)(3).*

A service member whose marriage ends after becoming eligible to participate in the Survivor Benefit Plan may "elect to provide an annuity to that former spouse." 10 U.S.C. § 1448(b)(3)(A)(i)(II). "Any such election must be written, signed by the person making the election, and received by the Secretary concerned within one year after the date of the decree of divorce, dissolution, or annulment." 10 U.S.C. § 1448(b)(3)(A)(i). A service member who elects to provide an annuity to a former spouse under section 1448(b)(3) must, at the time of making the election, provide the Secretary concerned with a written statement, signed by the service member and the former spouse, stating whether the election is being made pursuant to the requirements of a court order or voluntary written agreement. *See* 10 U.S.C. § 1448(b)(5).

In *Bonewell*, the court denied the government's motion to dismiss because the plaintiff, Ms. Rosa Bonewell, had alleged that the former spouse election requirements had been substantially satisfied when Mr. Bonewell submitted the relevant portion of his divorce decree along with a DD Form 2558, requesting that part of his retirement allotment be directed to

---

[11]The statute implicitly but not explicitly links the submission of a request with provision of a copy of the court order or official statement giving the former spouse rights to SBP coverage. However, the version of the Department of Defense Financial Management Regulation 7000.14-R in effect at the time of Mr. and Mrs. Holmes' divorce specified that a written request by the former spouse must have been accompanied by "a copy of the pertinent court order or agreement referring to the SBP coverage." Dep't of Defense Financial Management Regulation 7000.14-R, Military Pay, Policy, and Procedures, vol. 7B, chap. 43 § 430503(C) (Oct. 2000).

Ms. Rosa Bonewell.  *See* 95 Fed. Cl. at 754, 768.

Whether Mr. Holmes submitted his divorce decree to the government is not known. Ms. Noreen Holmes apparently received a portion of Mr. Holmes' retirement benefits monthly, subsequent to the divorce.  *See* Compl. ¶ 41.  These benefits apparently were paid because Mr. Holmes submitted an allotment form similar to the one the service member submitted in *Bonewell*.  *See* Hr'g Tr. 59:8-59:20 (Feb. 24, 2011).  That allotment form is not in the administrative record.  *See* Hr'g Tr. 21:25-22:3.  It is not known whether Mr. Holmes submitted a copy of the divorce decree with an allotment form or for any another purpose.  *See* Hr'g Tr. 22:24-23:3.  Although Ms. Noreen Holmes has alleged the government knew about the divorce, Compl. ¶¶ 54-55, 101, there is no evidence in the record the government was furnished with a copy of their divorce decree prior to her submission of the decree to the BCNR.[12]  The absence of evidence that Thomas Holmes submitted the divorce decree further impedes a substantial-compliance contention.

## C.  *Equitable Tolling*

Ms. Noreen Holmes argues that the one-year period to make a deemed election should be equitably tolled.  This issue was implicitly raised in Ms. Noreen Holmes' Petition for Correction of Military Record, DD Form 149, filed on February 20, 2008.  *See* AR-14 to 15 (discussing Ms. Noreen Holmes' lack of notice and knowledge).

Equitable tolling is appropriate "'where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'" *Young v. United States*, 535 U.S. 43, 50 (2002) (quoting *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990)).  The Supreme Court has acknowledged that equitable tolling may be appropriate under some statutory regimes and in deserving circumstances.  In *Baldwin County Welcome Center v. Brown*, 466 U.S. 147 (1984) (per curiam), the Court took note of a number of circuit court opinions that permitted tolling, including where:

> a claimant has received inadequate notice, *see Gates v. Georgia-Pacific Corp.*, 492 F.2d 292 ([9th Cir] 1974); . . . where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon*, see Harris v. Walgreen's Distribution Center*, 456 F.2d 588 ([6th Cir.] 1972); . . . where the court has led the plaintiff to believe that she had done

_____

[12]At the hearing on the motions, the government accepted for purposes of resolving the motion to dismiss that it had a copy of the divorce decree, apparently believing that Ms. Noreen Holmes had alleged that the government had a copy.  *See* Hr'g Tr. 14:17-15:5, 56:9-57:2. However, the government "d[id] not concede that some entity within the Department of Defense had a copy of the divorce decree before Noreen filed her materials with the BCNR."  Hr'g Tr. 56:17-56:20.

everything required of her, *see Carlile v. South
Routt School District RE 3-J*, 652 F.2d 981 ([10th
Cir.] 1981) . . . [or] where affirmative misconduct
on the part of a defendant lulled the plaintiff into
inaction.   *See Villasenor v. Lockheed Aircraft,
Corp.*, 640 F.2d 207 ([9th Cir.] 1981); *Wilkerson v.
Siegfried Insurance Agency, Inc.*, 621 F.2d 1042
([10th Cir.] 1980); *Leake v. University of
Cincinnati*, 605 F.2d 255 ([6th Cir.] 1979).

*Id.* at 151.  Ms. Noreen Holmes has argued that equitable tolling is appropriate in this instance
because she was "induced" by the government into allowing the one-year deadline to pass by the
government's failure to give notice of the one-year period for her to make a deemed election.
Pl.'s Cross-Mot. at 16.[13]

The government's lack of notice to Ms. Noreen Holmes does not support equitable
tolling.  The United States is not required to provide service members' former spouses with
notice of their rights and obligations under the SBP.  *See Pence*, 52 Fed. Cl. at 646-47; *Woll*, 41
Fed. Cl. at 375 ("The elaborate statutory scheme for SBP insurance does not place that burden on
the Army, and makes it incumbent on the spouse to trigger notification for a deemed election of
former spouse benefits."); *see also Japanese War Notes Claimants Ass'n v. United States*, 373
F.2d 356, 359 (Ct. Cl. 1967) ("Ignorance of rights which should be known is not enough" to
trigger equitable tolling.).  Equitable tolling therefore is not sustainable here.

### D. *Synopsis*

The BCNR's decision rested on two apparent grounds: first, that neither Ms. Noreen
Holmes nor Mr. Holmes had fulfilled the statutory requirements to elect SBP former spouse
coverage; and, second, that it had a policy of not awarding a benefit when the decision would
take the benefit from another party.  In addressing the first ground, the BCNR did not consider
any equitable principles such as substantial compliance.  The court cannot say that the BCNR's
choice was arbitrary, capricious, or contrary to law.  The substantial-compliance doctrine is a
narrow one.  *See Credit Life Ins. Co. v. United States*, 948 F.2d 723, 726-27 (Fed. Cir. 1991).
Moreover, regardless of whether or how the substantial-compliance doctrine might apply to
Survivor Benefit Plan elections, there is no evidence that Thomas or Noreen Holmes complied
with the former spouse election procedures in any way, let alone in a substantial way.

More problematic is the Board's statement that "as a general matter, the Board will not
take action when such action will operate to the detriment of an individual."  AR-6.  This policy
has no stated legal justification and serves to prevent full and fair adjudication of competing

---

[13]Ms. Noreen Holmes also argues that Thomas Holmes induced her to let the election
deadline pass by promising "that she would continue to be covered by the SBP following their
divorce."  Pl.'s Cross-Mot. at 15.  However, Ms. Noreen Holmes is endeavoring to apply
equitable tolling against the government, not Thomas Holmes, and for that purpose any material
misrepresentation would have to be made by or be attributable to a governmental official.

claims for survivor benefits.  Nonetheless, in this instance, the failure of Noreen and Thomas Holmes to effect a former-spouse election mandates the result that the Board reached.  Under the facts at hand, the Board's policy amounts to a harmless error.  *See Christian v. United States*, 337 F.3d 1338, 1343 (Fed. Cir. 2003) (addressing application of the harmless error doctrine in military pay cases).

In light of the foregoing, Ms. Noreen Holmes' motion for judgment on the administrative record is unavailing, and the government's motion for judgment on the administrative record must be granted.

## CONCLUSION

For the reasons stated, the government's motion to dismiss is GRANTED IN PART AND DENIED IN PART.  It is granted insofar as plaintiff has claimed an entitlement to relief based upon the due process and equal protection clauses, standing alone, and upon the takings clause, but it is otherwise denied.  The defendant-intervenor's motion to supplement the administrative record is DENIED.  The plaintiff's motion to supplement the administrative record and motion for judgment on the administrative record are DENIED.  The government's motion for judgment on the administrative record is GRANTED.  The Clerk shall enter judgment in accord with this decision.

No costs.

It is so ORDERED.

s/ Charles F. Lettow

Charles F. Lettow
Judge
